Case No. 23-12048

In the United States Court of Appeals
for the Eleventh Circuit

James Monroe Dailey,
Appellant

v.

Charles Fleming, Kyle Spates, and Denet Bryant,
Appellees

On appeal from the United States District Court
for the Middle District of Georgia

**Appellant's Opening Brief**

Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

We file this Certificate of Interested Persons and Corporate Disclosure Statement in accordance with Eleventh Circuit Rule 26.1-1:

1. Bryant, Denet, Rutledge State Prison, Appellee

2. Burch, Thomas, Attorney

3. Carr, Christopher M., Attorney General of Georgia

4. Dailey, James Monroe, Appellant

5. Fleming, Charles, Rutledge State Prison, Appellee

6. Hamilton, Daniel W., Special Assistant Attorney General

7. Hyles, Stephen, Magistrate Judge, U.S. District Court for the Middle District of Georgia

8. Land, Clay D., Judge, U.S. District Court for the Middle District of Georgia

9. Spates, Kyle, Rutledge State Prison, Appellee

## Statement Regarding Oral Argument

We respectfully request oral argument. Within minutes of being placed in Dormitory C at Rutledge State Prison, Mr. Dailey was stabbed multiple times, hit in the head with a brick, and robbed by two fellow inmates, Murdock and Ellis, who had similarly attacked and robbed four other older inmates in the preceding month. Based on that, Mr. Dailey sued Deputy Warden of Security Fleming for being deliberately indifferent to the risk that Murdock and Ellis posed. In response, Deputy Warden Fleming never denied knowledge of Murdock and Ellis's prior attacks—even though his two co-defendants did—and he admitted that he was "generally notified of serious security issues" in his role as deputy warden of security. But then he said that he was unaware that Murdock and Ellis posed any risk to Mr. Dailey specifically. The district court accepted that argument and granted summary judgment on Mr. Dailey's Eighth Amendment claim, concluding that Deputy Warden Fleming lacked subjective awareness of a substantial risk of harm. We respectfully request oral argument to address why that decision cannot be reconciled with cases like *Farmer v. Brennan*, 511 U.S. 825 (1994), *Lane v. Philbin*, 835 F.3d 1302 (11th Cir. 2016), and *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611 (11th Cir. 2007).

# Table of Contents

Statement Regarding Oral Argument ........................................................................... i

Table of Citations.................................................................................................. iii

Statement Regarding Jurisdiction ...........................................................................v

Statement of the Issues......................................................................................... 1

Statement of the Case ......................................................................................... 2

Standard of Review.............................................................................................. 7

Summary of the Argument.................................................................................... 7

Argument........................................................................................................... 10

    I.      A reasonable jury could find that Mr. Dailey faced a substantial risk of serious harm in Dormitory C at Rutledge State Prison.................. 11

    II.    A reasonable jury could find that Deputy Warden of Security Fleming was deliberately indifferent to the substantial risk of harm that Mr. Dailey faced ................................................................. 15

Conclusion ........................................................................................................ 22

Certificate of Compliance

Certificate of Service

## Table of Citations

**Cases**

*Baker v. Upson Reg'l Med. Ctr.,*
94 F.4th 1312 (11th Cir. 2024) .................................................................... 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................... 11

*Bowen v. Warden, Baldwin State Prison,*
826 F.3d 1312 (11th Cir. 2016) ..................................................................... 15

*Caldwell v. Warden, FCI Talladega,*
748 F.3d 1090 (11th Cir. 2014) ................................................15, 17, 19–20, 22

*Farmer v. Brennan,*
511 U.S. 825 (1994) ...................................................... i, 10, 14–15, 17, 19, 22

*Hale v. Tallapoosa Cnty.,*
50 F.3d 1579 (11th Cir. 1995) ................................................................. 10–12

*Lane v. Philbin,*
835 F.3d 1302 (11th Cir. 2016) ............................................................. i, 11–14

*Marbury v. Warden,*
936 F.3d 1227 (11th Cir. 2019) ...................................................................... 7

*Marsh v. Butler Cnty., Ala.,*
268 F.3d 1014 (11th Cir. 2001) .............................................................. 11–14

*Q.F. v. Daniel,*
768 F. App'x 935 (11th Cir. 2019)........................................................... 19–20

*Rodriguez v. Sec'y for Dep't of Corrs.,*
508 F.3d 611 (11th Cir. 2007) .................................................i, 17–18, 20, 22

*Strickland v. Water Works and Sewer Bd. of City of Birmingham,*
  239 F.3d 1199 (11th Cir. 2001) ............................................................. 7

**Statutes**

28 U.S.C. § 1291 ................................................................................................v

42 U.S.C. § 1983 ........................................................................................v, 2, 6

**Secondary Sources**

U.S. Dep't of Just. Civ. Rts. Div., *Investigation of Georgia Prisons* (Oct. 1, 2024) ....... 14

## Statement Regarding Jurisdiction

Mr. Dailey filed his complaint under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Georgia on January 12, 2022. DE 1. The magistrate judge recommended granting the defendants' motion for summary judgment, and, on June 6, 2023, the district court adopted the magistrate judge's report and recommendation over Mr. Dailey's objections. DE 77; DE 80; DE 81. On June 20, 2023, Mr. Dailey timely filed a notice of appeal. DE 83. This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

Mr. Dailey was stabbed, beaten, and robbed by inmates Murdock and Ellis in Dormitory C at Rutledge State Prison on May 27, 2021. Because Murdock and Ellis had similarly attacked four other older inmates in the preceding month, Mr. Dailey sued Deputy Warden of Security Fleming for being deliberately indifferent to the risk that Murdock and Ellis posed. The district court granted summary judgment for Deputy Warden Fleming, but its decision raises two questions.

1. Did Mr. Dailey face a substantial risk of serious harm in Dormitory C?

2. Could a reasonable jury find that Deputy Warden Fleming was subjectively aware of that risk?

<u>Statement of the Case</u>

**Nature of the Case.** James Dailey is an inmate at Rutledge State Prison. DE 1 at 6. On May 27, 2021, he was stabbed, beaten with a brick, and robbed by two of his fellow inmates, Murdock and Ellis. *Id.* Following that, he filed a *pro se* complaint in the United States District Court for the Middle District of Georgia, Columbus Division, under 42 U.S.C. § 1983 against Deputy Warden of Security Fleming, Officer Spates, and Officer Bryant. *Id.* at 1. He alleged that these defendants violated the Eighth Amendment by being deliberately indifferent to a substantial risk of harm. *Id.* at 6. The district court granted the defendants' motion for summary judgment, and this appeal centers only on Mr. Dailey's claims against Deputy Warden Fleming.

**Murdock and Ellis's previous attacks.** On April 23, 2021, Murdock and Ellis beat and robbed inmate Malcolm Marshall in Dormitory C-2. DE 67-7 at 2. As a result, Marshall sustained "multiple bruises to [his] head and body." *Id.* Though Marshall reported the attack, no charges are reflected in Murdock's or Ellis's disciplinary records. *Id.* at 3; DE 67-33 at 1; DE 67-34 at 3. Also, neither Murdock nor Ellis was moved to a different dorm following the attack. DE 67-33 at 3; DE 67-34 at 1.

Two days later, Ellis beat and stabbed inmate Ronald Sutton with a sharpened piece of plexiglass in Dormitory C-2. DE 67-6 at 2–3. Officers arrived at Sutton's cell thirty minutes later, filmed his injuries, and transported him to the hospital. *Id.* ("The

staff at the hospital told me I was very lucky[,] that my injuries were sever[e].").  Following the attack, Ellis was moved to the Administrative Segregation Unit in Dormitory G. DE 67-33 at 3.

Two days later, on April 27, Ellis assaulted an unnamed inmate in the Administrative Segregation Unit. DE 80 at 10; *see also* DE 67-33 at 1, 3 (showing that Ellis was still segregated and was found guilty of Great Assault with Serious Injury). Within two days, he was moved back to Dormitory C. DE 67-33 at 3.

Over the next two weeks, both Murdock and Ellis were placed in the medical unit for unspecified reasons, and Ellis was again placed in the Administrative Segregation Unit for unspecified reasons—all before both were ultimately placed back in Dormitory C-2 on May 12. *Id.*; DE 67-34 at 1.

Seven days later, on May 19, Ellis entered inmate Clarence Lewis's cell and said "You know what time it is." DE 67-8 at 2. Then he beat Lewis on the head and body and stole his personal property. *Id.* Lewis eventually escaped and beat on the dorm window to request medical attention. *Id.* at 3. Only after breaking the window did an officer open the door, allowing Lewis to exit. *Id.* Lewis then went to the medical facility and received butterfly stitches on his head. *Id.*

The next day, both Ellis and Murdock were transferred to the Administrative Segregation Unit in Dormitory G as a disciplinary move. DE 67-33 at 3; DE 67-34 at

1; *see also* DE 67-33 at 1 (showing that Ellis was found guilty of "High Fighting" for the May 19 assault on Lewis); DE 67-34 at 3 (showing that Murdock was found guilty of "High Fighting" for a May 19 assault on an unspecified inmate[1]). Murdock and Ellis each remained in the Administrative Segregation Unit for three days before being returned, together, to Dormitory C-1 on May 23. DE 56-21 at 1; DE 67-34 at 1.

**The attack on Mr. Dailey.** On April 12, 2021, Mr. Dailey was housed in the Administrative Segregation Unit in Dormitory G following a request for protective custody. DE 1-1 at 2 (explaining that he owed money to several inmates and feared for his safety if he were returned to the general population). Mr. Dailey petitioned to remain in protective custody, but his request was denied. *Id.* Nevertheless, Mr. Dailey refused to return to the general population and was charged with failure to follow officer commands. DE 56-2 at 21. On May 27, after being found guilty of that charge by Deputy Warden of Security Fleming, Mr. Dailey was told he would be removed from administrative segregation and returned to the general population. DE 1-1 at 3–4; *see also* DE 56-1 at 4 ("Defendant Fleming told Plaintiff that he was going to have to leave dormitory building G and go to one of three dormitories that housed general population offenders and bed space had been made available in dormitory C-1.").

---

[1] Though Lewis's declaration does not mention Murdock being present when he was attacked on May 19, it seems possible that Murdock was present at, and charged with, this attack along with Ellis.

As soon as Deputy Warden Fleming signed that order, Officer Bryant initiated the transfer. DE 1-1 at 4. In particular, she escorted Mr. Dailey to the front door of Dormitory C-1, opened it, instructed Mr. Dailey to enter, locked the door behind him, and walked to the other dormitory she supervised, Dormitory D. DE 56-2 at 26. Mr. Dailey, at that point, was on his own to find his cell and settle in. *Id.*

Within minutes of doing so, Murdock and Ellis entered his cell. DE 56-2 at 14–15. Approaching Mr. Dailey from behind, they hit him in the head with a brick. DE 67 at 3. Then one of them stated "You know what time it is," and both began beating Mr. Dailey with their fists. *Id.* Ellis also repeatedly stabbed Mr. Dailey in the arm and head with a metal shank. *Id.* After several minutes, Mr. Dailey crawled to the exterior dorm window to signal for help. *Id.* at 4. Approximately ten minutes later, Officer Bryant saw him, called for emergency assistance, and removed Mr. Dailey from the dorm. *Id.* at 4–5. She also, after Mr. Dailey pointed out his attackers through the dorm window, said "Oh, that's Ellis and Murdock again." DE 56-2 at 9. Murdock and Ellis, meanwhile, proceeded to steal Mr. Dailey's property. *Id.* at 15.

Following this, Mr. Dailey was transported to the medical unit in Rutledge State Prison, then transferred to the local hospital for further evaluation. DE 1-1 at 6; *see also* DE 56-2 at 19 (explaining that Deputy Warden Fleming escorted him to the hospital). Once there, he underwent an MRI to determine the severity of his head trauma

and he received ten stitches to the back of the head. DE 56-2 at 18 (explaining that Mr. Dailey had sustained cuts on the back of his head, two black eyes, bruising on his arms and back, and a concussion). Neither Ellis nor Murdock received disciplinary charges related to the assault. DE 67-33 at 1; DE 67-34 at 3.

**The district court grants summary judgment.** On January 12, 2022, Mr. Dailey sued Deputy Warden Fleming, Officer Spates, and Officer Bryant under 42 U.S.C. § 1983 for failing to protect him from Murdock and Ellis. The magistrate judge recommended granting summary judgment in the defendants' favor. In particular, the magistrate judge reasoned that (1) Mr. Dailey presented no evidence of widespread violence at Rutledge State Prison, (2) Murdock's and Ellis's disciplinary records reflected limited trouble prior to Mr. Dailey's attack, and (3) inmates Lewis, Sutton, and Marshall did not report their attacks directly to Deputy Warden Fleming. DE 77 at 12 (concluding that the defendants were not subjectively aware that Mr. Dailey faced a substantial risk of harm).

Adopting the magistrate judge's report and recommendation, the district court granted summary judgment for the defendants, reasoning that Mr. Dailey did not provide sufficient evidence for a reasonable jury to find that the defendants were subjectively aware of a substantial risk of harm. Mr. Dailey now timely appeals. In doing

so, he pursues his deliberate indifference claim only against Deputy Warden of Security Fleming.

### Standard of Review

This Court reviews "a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1203 (11th Cir. 2001) (citation omitted). For a pro se litigant, "summary judgment pleadings are construed liberally, and 'specific facts' alleged in his sworn complaint can suffice to generate a genuine dispute of fact." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019).

### Summary of the Argument

Within minutes of being placed in Dormitory C at Rutledge State Prison, Mr. Dailey was hit in the head with a brick, stabbed multiple times, and robbed by two fellow inmates, Murdock and Ellis, who had similarly attacked and robbed four other older inmates in the preceding month. Mr. Dailey sued Deputy Warden of Security Fleming for failing to protect him from the attack, but the district court dismissed his case, finding that Deputy Warden Fleming was not subjectively aware that Mr. Dailey faced a substantial risk of harm. We respectfully ask this Court to reverse that decision for two reasons. First, based on Murdock and Ellis's prior attacks, a reasonable jury

could find that Mr. Dailey faced a substantial risk of harm in Dormitory C. Second, based on Deputy Warden Fleming's failure to deny knowledge of those attacks, and on his specific job responsibilities, a reasonable jury could find that he was subjectively aware of the substantial risk of harm that Mr. Dailey faced.

**Mr. Dailey's substantial risk of harm.** It is not clear that the district court actually ruled on this element of Mr. Dailey's claim. But Deputy Warden Fleming argued that Mr. Dailey did not satisfy it, and the district court's order contains some statements that could, if read generously for Deputy Warden Fleming, be viewed as addressing it. That said, Mr. Dailey satisfied this element. In particular, he showed that in the 26 days before he was attacked by Murdock and Ellis in Dormitory C, Murdock and Ellis had robbed and beaten 4 other inmates. He also showed: that Murdock and Ellis had a pattern of targeting older inmates like him; that they liked to use contraband weapons like shanks or bricks; that their attacks caused serious injuries, including hospital visits; that officials at Rutledge State Prison did not adequately supervise the dorms to prevent these attacks, leaving one officer to monitor approximately 200 inmates in 2 separate buildings; and that prison officials never punished Murdock and Ellis, other than occasionally moving them to the Administrative Segregation Unit on a temporary basis before returning them to Dormitory C, allowing them to resume

8

their attacks. That evidence could allow a reasonable jury to conclude that Mr. Dailey faced a substantial risk of harm.

**Deputy Warden Fleming's subjective awareness.** The district court erred in finding that Deputy Warden Fleming lacked subjective awareness of that substantial risk of harm. First, unlike his co-defendants, Deputy Warden Fleming never denied knowing about Murdock and Ellis's prior attacks; he only denied knowing that Murdock and Ellis posed a risk to Mr. Dailey in particular. Second, Deputy Warden Fleming admitted that he was "generally notified of serious security issues" while he was deputy warden of security. Third, as the deputy warden of security, Deputy Warden Fleming's main job was to prevent and punish violence, including by administering the Administrative Segregation Unit. The only way he could do that is by maintaining awareness of what is happening in his facility. Fourth, in finding that Deputy Warden Fleming lacked subjective awareness of the risk that Mr. Dailey faced, the district court reasoned that Murdock's and Ellis's disciplinary records showed limited trouble prior to the attack on Mr. Dailey. But Mr. Dailey's own attack does not appear on their disciplinary records, and neither does the attack on inmate Marshall. In short, the disciplinary records are not an accurate guide to what Deputy Warden Fleming knew, and the district court did not view this evidence in the light most favorable to Mr. Dailey. Finally, the district court stated that inmates Lewis, Sutton, and Marshall did

not report their attacks directly to Deputy Warden Fleming and that there is no evidence of what they said to the officials who they told about their attacks. But again, Deputy Warden Fleming does not deny knowledge of their attacks, and, as deputy warden of security, he was "generally notified of serious security issues" at the prison. All of this is sufficient for a reasonable jury to find that he had subjective knowledge of the substantial risk of harm that Mr. Dailey faced.

## Argument

On May 27, 2021, Mr. Dailey was stabbed, beaten, and robbed in Dormitory C by fellow inmates Murdock and Ellis. DE 67 at 3. Because Murdock and Ellis had already beaten and robbed four older inmates like Mr. Dailey in the preceding month, Mr. Dailey sued Deputy Warden of Security Fleming for failing to protect him from the attack. DE 1 at 5; DE 80 at 10; *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.") (cleaned up).

To support his claim, Mr. Dailey had to show "(1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). The district court found that he did not satisfy all of those elements because he failed to show that Deputy Warden Fleming was subjectively aware of a substantial risk of harm posed by Murdock and

Ellis. DE 77 at 12, 13. Because the record contradicts that finding, we respectfully ask this Court to reverse and remand the case for further proceedings.

**I.      A reasonable jury could find that Mr. Dailey faced a substantial risk of serious harm in Dormitory C at Rutledge State Prison.**

When dismissing Mr. Dailey's failure to protect claim, the district court appeared to focus on the subjective awareness element, finding that Deputy Warden Fleming lacked awareness of the risk that Murdock and Ellis posed. Still, Deputy Warden Fleming moved for summary judgment based on all three elements, and the district court's order contains some statements that could, if read generously for Deputy Warden Fleming, indicate that Mr. Dailey did not show a substantial risk of harm. That being the case, we will address how Mr. Dailey satisfies this element. *See Lane v. Philbin*, 835 F.3d 1302 (11th Cir. 2016); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007); *Hale*, 50 F.3d at 1582–83.

In *Lane*, for example, the petitioner alleged that over ninety percent of the inmates in his prison were gang members and that those inmates frequently robbed and stabbed other inmates who were not gang-affiliated. *Lane*, 835 F.3d at 1307 (referencing "numerous stabbings and beatings"). He also alleged that "only one officer supervised two separate 50-man dorms of E-Building" and that the building housed "dangerous predators." *Id.* at 1307–08 (cleaned up) (explaining that inmates housed in E-

Building often possessed weapons built from items used in their work program). Consistent with those conditions, he then alleged that he was stabbed multiple times by a gang-affiliated inmate. *Id.* This Court, based on those allegations, found that he sufficiently demonstrated a substantial risk of harm. *Id.* at 1308; *see also Marsh*, 268 F.3d at 1028 ("We accept that conditions in a jail facility that allow prisoners ready access to weapons, fail to provide an ability to lock down inmates, and fail to allow for surveillance of inmates pose a substantial risk of serious harm to inmates."); *Hale*, 50 F.3d at 1582–83 (finding that a detainee who was beaten by other detainees showed a substantial risk of harm because he produced evidence "that inmate-on-inmate violence occurred regularly when the jail was overcrowded" and "that the violence was severe enough to require medical attention and even hospitalization on occasion").

Here, the circumstances are the same. Mr. Dailey presented evidence that he was attacked with a brick and a shank by Murdock and Ellis. DE 56-2 at 15. He also presented evidence that Murdock and Ellis violently attacked four other inmates in the preceding twenty-six days. DE 80 at 10. He explained that four of these attacks, including his own, occurred in Dormitory C, that Murdock and Ellis had a practice of targeting older men like him, that two of the attacks, including his own, involved contraband weapons like a shank, and that each of the attacks required the victim to seek medical attention either at the prison or at the local hospital. DE 56-2 at 8; DE

67 at 2–9, 13–14; DE 67-6 at 3; DE 67-7 at 2–3; DE 67-8 at 2–3; DE 77 at 3–4. Also, after each attack, prison officials were notified, yet Murdock and Ellis faced no punishment, other than occasionally being temporarily placed in the Administrative Segregation Unit before being returned to Dormitory C. *Id.* In fact, Murdock and Ellis were moved into Dormitory C-1 *together* following the attack on inmate Lewis, four days before the attack on Mr. Dailey. DE 77 at 4–5.

On top of that, Mr. Dailey alleged that Murdock and Ellis were able to carry out these attacks because Dormitory C was inadequately supervised like the dormitories in *Lane* and *Marsh*. Specifically, Officer Bryant was the sole officer responsible for supervising Dormitories C and D when Mr. Dailey was attacked, giving her responsibility for approximately 200 inmates—i.e., twice the number of inmates supervised by the officer in *Lane*, and four times the number of inmates supervised by the officer in *Marsh*. DE 56-2 at 4, 27; DE 56-23 at 1; DE 77 at 6; *Lane*, 835 F.3d at 1307–08; *Marsh*, 268 F.3d at 1025. In fact, when she delivered Mr. Dailey to Dormitory C, she just opened the door and let him find his own way inside, and neither she nor any other officer was present inside when Murdock and Ellis began beating him a few minutes later. DE 56-2 at 26. Given these circumstances, even the district court recognized that inmates housed within Dormitory C "apparently had free movement within the pods." DE 77 at 3, 6 (acknowledging that inmates in Dormitory C were not locked

13

down, as Murdock and Ellis were able to leave their cells whenever they chose to attack other inmates). In other words, the district court recognized, like this Court did in *Lane* and *Marsh*, that no prison officials were around to keep the inmates safe. *See Lane*, 835 F.3d at 1308; *Marsh*, 268 F.3d at 1025.[2]

At bottom, based on this evidence, a reasonable jury could find that Mr. Dailey faced a substantial risk of harm at the time he was placed in Dormitory C with Murdock and Ellis. That being the case, if the district court found that Mr. Dailey presented insufficient evidence of a substantial risk of harm, it was wrong to do so, and this Court should reject its decision. *See, e.g., Marsh*, 268 F.3d at 1028, 1034 (finding a substantial risk of serious harm—even though the record did not include a history of inmate assaults resulting in serious injuries—because inmates had access to weapons, the prison did not lock inmates down, and no one supervised the inmates); *see also Farmer*, 511 U.S. at 833 ("[H]aving stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.").

---

[2] The U.S. Department of Justice recently confirmed this, concluding last October that the Georgia Department of Corrections "fails to provide incarcerated persons housed at the medium- and close-security levels with the constitutionally required minimum of reasonable physical safety." U.S. Dep't of Just. Civ. Rts. Div., *Investigation of Georgia Prisons*, 14 (Oct. 1, 2024) ("Violence, including sexual assaults, stabbings, beatings, and other brutal violence, is a systemic problem in prisons across the state.").

**II.** **A reasonable jury could find that Deputy Warden of Security Fleming was deliberately indifferent to the substantial risk of harm that Mr. Dailey faced.**

To satisfy the deliberate indifference prong of his Eighth Amendment claim, Mr. Dailey had to show that Deputy Warden Fleming "both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner." *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (citing *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)); *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The district court held that Mr. Dailey did not present sufficient evidence on the first piece of this deliberate indifference inquiry—i.e., on Deputy Warden Fleming's subjective knowledge of the risk of harm posed by Murdock and Ellis. DE 77 at 12. Specifically, it found: that Mr. Dailey gave no evidence of widespread violence to support a claim based on the prison environment generally; that the disciplinary records show limited trouble by Murdock and Ellis prior to the attack on Mr. Dailey; that inmates Lewis, Sutton, and Marshall did not report their attacks directly to Deputy Warden Fleming; and that there is no evidence of what inmates Lewis, Sutton, and Marshall said to the officials who they told about their attacks. DE 77 at 12–13. Because substantial record evidence contradicts each of those findings, a reasonable jury

could find that Deputy Warden Fleming knew of the substantial risk posed by Murdock and Ellis. That being the case, this Court should reverse the district court's grant of summary judgment.

First, Deputy Warden Fleming's affidavit creates a genuine dispute of material fact over whether he knew about the risk that Murdock and Ellis posed to Mr. Dailey. In particular, Mr. Dailey originally sued three defendants: Deputy Warden Fleming; Officer Spates; and Officer Bryant. All three were represented by the same attorney, and all three submitted affidavits with that attorney's help. We mention that because Officer Spates' and Officer Bryant's affidavits each denied knowing that Murdock and Ellis beat and robbed four inmates before beating and robbing Mr. Dailey. DE 56-18 at 4 ("I was not aware that GDC offenders Ellis and Murdock were allegedly known to violently assault and rob Georgia Department of Corrections offenders assigned to dormitory building C of Rutledge State Prison before, during, or after May 27, 2021."); DE 56-23 at 3 (same). Deputy Warden Fleming's affidavit, on the other hand, never denied knowing about those prior attacks. Instead, his affidavit simply stated that he was "not aware that Georgia Department of Corrections Offenders Ellis and Murdock posed a danger *to offender Dailey* prior to or after May 27, 2021." DE 56-13 at 5 (emphasis added). In other words, while Officer Spates and Officer Bryant each specifically denied knowing about Murdock and Ellis's history, Deputy Warden

16

Fleming did not. And the only defense he raised was that he did not know that Murdock and Ellis would attack Mr. Dailey in particular. That could lead a reasonable jury to conclude that Deputy Warden Fleming knew of the substantial risk that Murdock and Ellis posed. *See Farmer*, 511 U.S. at 843 ("Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that *the complainant* was especially likely to be assaulted by the specific prisoner who eventually committed the assault.") (emphasis added); *Caldwell*, 748 F.3d at 1102 ("[A] jury need not infer that the defendants *intended* that inmate Pinson harm Caldwell or that they actually *believed* that inmate Pinson would harm Caldwell.") (emphases in original).

Second, Deputy Warden Fleming admitted in his interrogatory responses that he "was generally notified of serious security issues at [RSP] when he served there as Deputy Warden of Security." DE 77 at 11; DE 67-39 at 4. That, too, creates a jury question over whether he was aware of Murdock and Ellis's prior attacks. *See Rodriguez v. Sec'y for Dept. of Corrs.*, 508 F.3d 611, 619 (11th Cir. 2007). In *Rodriguez*, for example, the inmate submitted an Inmate Request Form that requested transfer or protective custody because he had "a problem with another inmate in his compound." *Id.* The defendant prison official testified in his deposition that he normally receives those forms, but that he never saw the one here. *Id.* This Court held that the "testimony

that he would ordinarily have received such a form, coupled with his express denial that he received the one submitted [here] leads us to conclude that there is a genuine issue of material fact" about whether the prison official was aware of the Inmate Request Form prior to the attack. *Id.* That same principle applies to Mr. Dailey's case. Specifically, Deputy Warden Fleming's testimony that he would ordinarily be notified of serious security issues like Murdock and Ellis's prior attacks, coupled with his denial of awareness of those attacks, creates a genuine issue of material fact to be decided by a jury on whether he did, in fact, know about them. Because the district court found otherwise, this Court should reverse. *See id.*

Third, testimony and other evidence related to Deputy Warden Fleming's job duties also could lead a reasonable jury to conclude that he knew of Murdock and Ellis's previous attacks. For instance, as deputy warden of security, his main job was to prevent and punish violent conduct, which included administering the Administrative Segregation Unit. DE 56-17 at 2 ("The Classification Committee, Deputy Warden/Assistant Superintendent/Unit Manager, or in an emergency, the Warden/Superintendent may place in Administrative Segregation an offender whose continued presence in the general population poses a serious threat to life, property, self, staff, or other offenders, or to the security or orderly running of the facility."); DE 56-17 at 13–14 (requiring "at least one (1) Deputy Warden" to visit the Administrative

Segregation Unit each weekday and "talk with confined offenders"); DE 56-13 at 5 (showing that "the Deputy Warden/Assistant Superintendent/Unit Supervisor" review requests for protective custody in the Administrative Segregation Unit). To fulfill that duty, Deputy Warden Fleming would have needed to know what was happening in his facility, including who was being segregated and why. *See id.*; *see also* DE 56-1 at 4 (showing that Deputy Warden Fleming was the official who told Mr. Dailey that he had to leave the Administrative Segregation Unit). That matters here because Ellis had disciplinary bed moves into the Administrative Segregation Unit on April 25 and May 20, and Murdock had a disciplinary bed move into the Unit on May 20. DE 67-33 at 3; DE 67-34 at 1. Each of these dates immediately follows the attacks on inmates Sutton and Lewis. DE 80 at 10. A reasonable jury could decide that, based on Deputy Warden Fleming's involvement with administrative segregation, he was aware of Murdock and Ellis's previous attacks that resulted in their bed moves into the Administrative Segregation Unit on those dates. *See Caldwell*, 748 F.3d at 1100 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.") (cleaned up) (quoting *Farmer*, 511 U.S. at 842); *see also Q.F. v. Daniel*, 768 F. App'x 935, 946 (11th Cir. 2019) ("[T]he defendants' supervisory positions suggest,

at least by inference, that the defendants were aware of the staffing, classification, and segregation issues at Eastman.").

Fourth, while the district court stated that disciplinary records show limited trouble by Murdock and Ellis prior to their attack on Mr. Dailey, Mr. Dailey submitted evidence showing that the prison does not keep accurate records. For example, Murdock's and Ellis's disciplinary reports do not reference their attack on Mr. Dailey. DE 67-34 at 3; DE 67-33 at 1. Also, the affidavits from inmates Marshall, Sutton, and Lewis show that their assaults occurred on April 23, April 25, and May 19, and that prison officials were aware of each one. DE 67-6 at 2–3; DE 67-7 at 2–3; DE 67-8 at 2–3; DE 80 at 10. Yet Murdock's and Ellis's disciplinary records do not include all of those assaults. DE 67-33 at 1; DE 67-34 at 3. In short, Murdock's and Ellis's disciplinary records are contradicted by substantial record evidence, and the district court did not review that evidence in the light most favorable to Mr. Dailey. Had it done so, it would have found a jury question on what Deputy Warden Fleming knew, exactly, about Murdock and Ellis's history of attacking other inmates. *See Rodriguez*, 508 F.3d at 619; *Caldwell*, 748 F.3d at 1100–02; *see also Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (recognizing that courts cannot "make credibility determinations or weigh the parties' evidence" when deciding whether to grant summary judgment).

Finally, and related to that point, the district court stated that inmates Lewis, Sutton, and Marshall did not report their attacks directly to Deputy Warden Fleming and that there is no evidence of what they said to the officials who they told about their attacks. DE 77 at 12. But again, Deputy Warden Fleming does not deny knowledge of their attacks. DE 56–13 at 5. Plus, inmate Sutton stated in his declaration that his "injuries were recorded by the officer cam[e]ra," that he was "taken to the hospital for treatment," and that he was "never informed of what charges were brought against Ellis." DE 67-6 at 3. Similarly, inmate Marshall stated in his declaration that he "reported to the dorm officer what had happened to me" and that "Ellis and Murdock were not punished in any way." DE 67-7 at 3. Likewise, inmate Lewis stated in his declaration that the dorm officer "opened the door to let me out" after he "began beating on the dorm window to get the officer[']s attention," that he "was taken to medical for treatment," and that "Ellis was moved" after the attack. DE 67-8 at 3. In other words, all three indicated in their affidavits, in different ways, that they reported their attacks to prison officials and that they told the officials who had attacked them. Based on that, a reasonable jury could find that Deputy Warden Fleming was aware of their attacks, especially when he did not deny that awareness and when he is: deputy warden of security; someone who is "generally notified of serious security issues" at the prison; someone who administers the Administrative Segregation Unit; and

21

someone who sometimes accompanies inmates who have been attacked by other inmates to the hospital.[3] Because the district court disregarded all of that evidence when finding that he lacked subjective awareness of a substantial risk of harm, this Court should reverse. *See Farmer*, 511 U.S. at 842–43; *Rodriguez*, 508 F.3d at 619; *Caldwell*, 748 F.3d at 1100–02.

<u>Conclusion</u>

After attacking four other inmates in the previous month, Murdock and Ellis attacked Mr. Dailey using contraband weapons that were readily available in Dormitory C of Rutledge State Prison. Because a reasonable jury could find that Deputy Warden Fleming had subjective awareness of the risk that Murdock and Ellis posed to Mr. Dailey, the district court should not have granted summary judgment on these facts. We respectfully ask this Court to reverse.

Date: February 5, 2025

Respectfully submitted,

<u>/s/ Thomas Burch</u>
Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
(706) 542-5236

---

[3] Mr. Dailey testified that Deputy Warden Fleming went to the emergency room with him after he was attacked by Murdock and Ellis. *See, e.g.,* DE 56-2 at 8. Based on that testimony, a reasonable jury could find that Deputy Warden Fleming went to the hospital with inmate Sutton, too, after Sutton was attacked by Ellis. DE 67-6 at 2–3.

## Certificate of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,431 words, excluding the parts of the brief carved out by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font.

/s/ Thomas Burch
Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
(706) 542-5236

<u>**Certificate of Service**</u>

I, Thomas Burch, certify that I served this Opening Brief via the Court's ECF system on February 5, 2025, and that I mailed 4 copies to the Clerk of the Court on the same date.

<u>/s/ Thomas Burch</u>
Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
(706) 542-5236